# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**<br>**1718 Connecticut Ave., NW**<br>**Suite 200**<br>**Washington, DC 20009**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Broadcasting Board of Governors**<br>**330 Independence Avenue, SW**<br>**Washington, DC 20237**<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No. _____**<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.       This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), for injunctive and other appropriate relief, seeking the release of agency records requested by the Electronic Privacy Information Center ("EPIC") from the Broadcasting Board of Governors ("BBG").

2.       This lawsuit challenges the failure of BBG to disclose documents in response to EPIC's May 31, 2013, Freedom of Information Act request ("EPIC's Request"). EPIC's Request sought agency records related to the BBG's relationship with The Tor Project, Inc., the Tor Solution Corporation, and the Tor Solutions Group. Defendant has failed to comply with its statutory deadline and has failed to disclose a single record. EPIC has filed an administrative

1

appeal and exhausted its administrative remedies. EPIC asks the Court to order immediate

disclosure of all responsive records.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B),

and 5 U.S.C. § 552(a)(6)(C)(i) (2012). This Court also has jurisdiction over this action pursuant

to 28 U.S.C. § 1331 (2012). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) (2012).

## Parties

4.      Plaintiff EPIC is a public interest research organization incorporated as a not-for-

profit corporation in Washington, D.C. EPIC conducts oversight of government activities and

policies and analyzes their impact on civil liberties and privacy interests. Among its other

activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also

maintains a popular Internet site, http://www.epic.org, which contains extensive information on

current privacy issues, including documents obtained from federal agencies under the FOIA.

EPIC routinely and systematically disseminates information to the public through its website and

other media outlets. This Court recognized EPIC's role as a representative of the news media in

*EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5 (D.D.C. 2003).

5.      Defendant BBG is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

The BBG oversees all U.S. civilian international media.

## FACTS

6.      Encryption is the core technology for privacy and security.

7.      "Tor" is one of several encryption techniques deployed by Internet users to

safeguard privacy and security.

8.      According to Wikipedia, "Tor directs Internet traffic through a free, worldwide volunteer network consisting of more than three thousand relays to conceal a user's location or usage from anyone conducting network surveillance or traffic analysis."

9.      Tor is currently maintained by the Tor Project, Inc., a 501(c)(3) research-education nonprofit organization.

10.     The BBG met with the Tor Project in January 2010 to discuss "various topics."

11.     In June 2012, the Tor Project signed a contract with BBG.

12.     On July 25, 2012, *SC Magazine* reported that the BBG had provided the Tor Project with funding to install 125 "exit nodes" into the network software.[1]

13.     The Tor Project reported on August 4, 2013 that a "large number of hidden service addresses have disappeared from the Tor Network."[2]

14.     *The New York Times, The Guardian,* and *Pro Publica* reported on September 5, 2013 that the National Security Agency is able to "undermine the major tools protecting the privacy of everyday communications in the Internet age, according to newly disclosed documents."[3]

15.     A security researcher subsequently determined that Tor communications are vulnerable to attack by the National Security Agency.[4]

---

[1] Darren Pauli, "Tor Project mulls $100 cheque for exit relay hosts," *SC Magazine* (July 25, 2012), *available at* http://www.scmagazine.com.au/News/309813,tor-project-mulls-100-cheque-for-exit-relay-hosts.aspx.

[2] "Hidden Services, Current Events, and Freedom Hosting," The Tor Project (Aug. 4, 2013), available at https://blog.torproject.org/blog/hidden-services-current-events-and-freedom-hosting.

[3] Nicole Perlroth, Jeff Larson, and Scott Shane, "N.S.A. Able to Foil Basic Safeguards of Privacy on Web," *New York Times* (Sep. 5, 2013) (in print at A1 on Sep. 6, 2013), available at http://www.nytimes.com/2013/09/06/us/nsa-foils-much-internet-encryption.html; Jeff Larson, "Revealed: The NSA's Secret Campaign to Crack, Undermine Internet Encryption," *Pro Publica* (Sep. 5, 2013), available at http://www.propublica.org/article/the-nsas-secret-campaign-to-crack-undermine-internet-encryption; James Ball, Julian Borger, and Glen Greenwald, "Revealed: how US and UK spy agencies defeat internet privacy and security," *The Guardian* (Sep. 5, 2013), available at http://www.theguardian.com/world/2013/sep/05/nsa-gchq-encryption-codes-security.

[4] Dan Goodin, "Majority of Tor crypto keys could be broken by NSA, researcher says," *Ars Technica* (Sept. 7, 2013), available at http://arstechnica.com/security/2013/09/majority-of-tor-crypto-keys-could-be-broken-by-nsa-researcher-says.

16.     As of 2012, the BBG had directed over $1 million dollars to Tor. The Department of State, the Department of Defense, and the National Science Foundation have also directed federal funds to Tor. In total, the U.S. Government provided 60% of Tor's development costs in 2012.[5]

17.     According to the "Minimization Procedures Used by the National Security Agency in Connection with Acquisitions of Foreign Intelligence,"[6] a person whose physical location is unknown, which will include many users of the Tor service, "will not be treated as a United States person, unless such person can be positively identified as such, or the nature or circumstances of the person's communications give rise to a reasonable belief that such person is a United States person."[7]

18.     Also, according to the "Minimization Procedures Used by the National Security Agency in Connection with Acquisitions of Foreign Intelligence," in the event that an intercepted communication is later deemed to be from a US person, the requirement to promptly destroy the material may be suspended in a variety of circumstances, including if the "communications that are enciphered or reasonably believed to contain secret meaning, and sufficient duration may consist of any period of time during which encrypted material is subject to, or of use in, cryptanalysis."[8]

**EPIC's FOIA Request**

---

[5] Brian Fung, "The feds pay for 60 percent of Tor's development. Can users trust it?," *The Washington Post* (Sep. 6, 2013), *available at* http://www.washingtonpost.com/blogs/the-switch/wp/2013/09/06/the-feds-pays-for-60-percent-of-tors-development-can-users-trust-it.

[6] Glen Greenwald and James Ball, "The top secret rules that allow NSA to use US data without a warrant – Exhibit B", *The Guardian* (June 20, 2013), *available at* http://www.guardian.co.uk/world/interactive/2013/jun/20/exhibit-b-nsa-procedures-document.

[7] Dan Goodin, "Use of Tor and e-mail crypto could increase chances that NSA keeps your data," *Ars Technica* (June 20, 2013), *available at* http://arstechnica.com/tech-policy/2013/06/use-of-tor-and-e-mail-crypto-could-increase-chances-that-nsa-keeps-your-data.

[8] *Id.*

19.     Paragraphs 1-18 above are hereby incorporated by reference as if set forth fully herein.

20.     On May 31, 2013, EPIC transmitted, via facsimile, a FOIA request to the BBG's FOIA Office, seeking records ("EPIC's FOIA Request").

21.     EPIC's FOIA Request asked for the following agency records:

    a.   All agreements and contracts concerning BBG funding or sponsorship of The Tor Project, Inc., Tor Solution Corporation, and Tor Solutions Group;

    b.   Technical specifications of all BBG computers running Tor nodes;

    c.   All reports related to BBG's modification of the Tor software; and

    d.   All agreements and contracts between the BBG and The Tor Project, Inc., Tor Solution Corporation, and Tor Solutions Group regarding features or capabilities in the Tor software.

22.     In EPIC's FOIA Request, EPIC also sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(4)(A)(ii).

23.     In EPIC's FOIA Request, EPIC further sought waiver of all duplication fees in accordance with 5 U.S.C. § 552(4)(A), because disclosure of the records requested will contribute significantly to public understanding of the operations or activities of the government. Specifically, EPIC stated that the request concerned both expenditures of the federal government and interactions between the development of a crucial piece of software that enables individuals to maintain anonymity and circumvent Internet restrictions.

## EPIC's Administrative Appeal

24.     Paragraphs 1-23 above are hereby incorporated by reference as if set forth fully herein.

25.     On July 26, 2013 EPIC filed an administrative appeal with the BBG ("EPIC's Administrative Appeal") for a failure to make a timely determination under the FOIA.

26.     At the time of EPIC's Administrative Appeal, 38 working business days had elapsed since EPIC's FOIA Request was submitted, without acknowledgement or response from the BBG.

27.     In EPIC's Administrative Appeal, EPIC restated its request for "news media" status for fee waiver purposes. EPIC also restated its request that any duplication fees should be waived because the subject of the request will "contribute significantly to the public understating of the operations or activities of the government."

### BBG's Acknowledgement

28.     Paragraphs 1-27 above are hereby incorporated by reference as if set forth fully herein.

29.     On July 26, 2013, the BBG acknowledged receipt of EPIC's FOIA Request by mail ("BBG Acknowledgement"). EPIC received the letter of acknowledgement on July 29, 2013. The responding Agency officer was Andrew T. Krog.

30.     In the BBG Acknowledgement, the agency assigned EPIC's Request Reference Number 13-0044.

31.     The BBG said it would "require additional time (10 business days) beyond the 20-day time limit for processing your request under 'unusual circumstances' defined by statute, specifically the need to search for the requested records from office(s) outside of this office."

32.     The BBG placed EPIC's Request in Category II, consisting of educational and scientific institutions and news media, meaning that duplication fees would be assessed.

33.     Finally, the BBG denied EPIC's request for a fee waiver. The BBG Acknowledgement stated that "the Agency has determined that your request does not provide sufficient information to establish how the records sought would contribute to the general publics understanding of the subject matter in question to a significant extent. Furthermore, your request does not provide sufficient information as to how the records requested would be disseminated to the public at large to facilitate greater understanding of Agency programs or operations."

### BBG's Response to EPIC's Administrative Appeal

34.     Paragraphs 1-33 above are hereby incorporated by reference as if set forth fully herein.

35.     On August 2, 2013, the BBG responded to EPIC's Administrative Appeal by mail. ("BBG Administrative Appeal Response"). EPIC received the BBG's Administrative Appeal Response on August 6, 2013. The responding Agency Officer was Andrew T. Krog.

36.     In the BBG Administrative Appeal Response, the agency stated it had "completed the search for responsive documents and presented them to Tor for its input regarding trade secret or commercial or financial information protectable under Exemption 4 in accordance with the Agency's supplemental regulations."

37.     The BBG further stated that the agency had not yet received a response from Tor, and therefore was "not able to produce documents at this time."

38.     The BBG further stated that the agency estimated it would be able to complete the processing of EPIC's FOIA Request within 15 business days.

39.     The BBG further stated that because "the OPEN Government Act restricts agencies from assessing fees when they fail to respond to a request within the required time period, the Agency will not assess fees in connection with your request."

40.     Finally, the BBG asserted that it had "fully satisfied your appeal to the extent permitted by the FOIA and Agency Regulations." It also noted that EPIC had the right to appeal the determination.

41.     Through the date of this pleading, the BBG has failed to produce any documents in response to EPIC's FOIA request.

**EPIC has Constructively Exhausted its Administrative Remedies**

42.     Paragraphs 1-41 above are hereby incorporated by reference as if set forth fully herein.

43.     It has been 68 business days since EPIC's FOIA Request was submitted to the BBG, and 24 business days since BBG responded to EPIC's FOIA Appeal.

44.     The BBG has failed to respond to EPIC's FOIA Appeal within the twenty-day time period prescribed by 5 U.S.C. § 552(a)(6)(A)(ii) (2012).

45.     The BBG's failure to respond within the twenty-day statutory limit constitutes a constructive denial of EPIC's request.

**Count I**
**Violation of FOIA: Failure to Comply With Statutory Deadlines**

46.     Paragraphs 1-45 above are hereby incorporated by reference as if set forth fully herein.

47.     As described above, Defendant BBG's failure to respond to EPIC's Request violated the statutory deadline imposed by the FOIA set forth in 5 U.S.C. § 552 (a)(6)(A)(ii).

48.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(4)(B).

49.     EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Count II
## Violation of FOIA: Unlawful Withholding of Agency Records

50.     Paragraphs 1-49 above are hereby incorporated by reference as if set forth fully herein.

51.     As described above, the BBG has failed to comply with statutory deadlines and failed to make responsive records available to EPIC.

52.     As a result of the BBG's unlawful delay, the agency has withheld responsive agency records from EPIC in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

53.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(4)(B).

54.     EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A.     order Defendant to promptly disclose to Plaintiff responsive agency records;

B.     order Defendant to file, within 14 days of the date of the Court's Order in this matter, a *Vaughn* index, *i.e.* an affidavit: 1) identifying each document withheld from disclosure; 2) stating defendant's claimed statutory exemption as to each

withheld document (or portion of a document); and 3) explaining why each

withheld document is exempt from disclosure;

C.     award Plaintiff its costs and reasonable attorneys' fees incurred in this action

pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

E.     grant such other relief as the Court may deem just and proper.


Respectfully submitted,


By: _____/s/_____

Marc Rotenberg, _____
Julia Horwitz, Esquire[**]
ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: September 9, 2013

---

[**] Julia Horwitz is barred in Maryland.